No. 596　　　　　July 1, 2026　　　　　77

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Jim A. ATWOOD,
individually and in his capacity as Trustee of the
Jim A. Atwood Trust dated August 10, 2017,
and J.A. Atwood Corporation, an Oregon corporation,
*Plaintiffs-Appellants,*

*v.*

OREGON DEPARTMENT OF TRANSPORTATION,
an administrative agency;
Kris Strickler, an individual;
and Debbie Lund, an individual,
*Defendants-Respondents.*

Marion County Circuit Court
21CV05571; A184470

Lindsay R. Partridge, Judge.

Argued and submitted October 15, 2025.

Nicholas A. Kampars argued the cause and filed the briefs for appellants.

Carson L. Whitehead, Assistant Attorney General, argued the cause for respondents. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, Joyce, Judge, and Hellman, Judge.

JOYCE, J.

Affirmed.

**JOYCE, J.**

Plaintiffs appeal from the trial court's dismissal of their first amended complaint (FAC), arguing that it erred in (1) determining that the court lacked subject matter jurisdiction to hear all six of plaintiffs' claims, and (2) finding that plaintiffs failed to state claims of relief for their two tort claims. We affirm with respect to plaintiffs' first three claims because plaintiffs did not assign error to the trial court's alternative bases for dismissal. As for the remaining claims, we conclude that the trial court did not err in granting defendants' motions to dismiss those claims for lack of subject matter jurisdiction and affirm.

## I.   FACTS

A.   *Plaintiffs' FAC Facts*

"We state the facts as alleged in plaintiff[s'] complaint, accepting as true [their] well-pleaded allegations with the benefit of all favorable factual inferences." *Wallace v. State ex rel PERB*, 245 Or App 16, 18, 263 P3d 1020 (2011). Plaintiffs owned a building on West Burnside Street in Portland, Oregon, at all material times of the events at issue in this case. The building has a west-facing wall that plaintiffs have used for commercial advertising purposes since obtaining an interest in the building (Wall Sign). Over the years, plaintiffs have both directly leased use of the Wall Sign to advertisers and entered into agreements with third parties that would broker the lease of the use of the Wall Sign to specific advertisers.

In 2009, plaintiff Atwood Corporation entered into a lease agreement with OnSite Advertising Services, LLC (OnSite), where plaintiff agreed to lease "the exterior building vertical wall *** for the purpose of displaying painted mural, painted advertising sign, signage applied by way of other materials *** or signage affixed by bolts or screws anchored into the building ***." OnSite was to act as both a lessee and as a broker or agent for plaintiffs, and both parties "intended for the [agreement] to provide a transitory right for OnSite and any successor in interest to manage the Wall Sign for a period of time, but never contemplated

the outright sale of the Wall Sign or any rights associated therewith from plaintiffs to OnSite or its successors."

In 2012, defendant Oregon Department of Transportation (ODOT) designated West Burnside Street—where plaintiffs' building is located—as a state highway subject to the permitting requirements under the Oregon Motorist Information Act (OMIA). *See* ORS 377.700 - 377.877. The OMIA governs the placement of signs along Oregon highways and "prohibits all but certain pre-existing 'outdoor advertising signs,' and restricts the placement of those signs." *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 638, 20 P3d 180 (2001) (citation omitted). Under ORS 377.712(2), "the owner of any outdoor advertising sign visible from a road or street that is designated as a state highway after May 30, 2007, is entitled to the issuance of an outdoor advertising sign permit for the sign upon application by the owner."

In early 2014, plaintiffs consented to OnSite assigning the Wall Sign lease to OnDisplay, who would act as the broker/lessee, and extended the lease through June 2019. The parties left all other lease provisions intact. Later that year, OnDisplay realized that the Wall Sign had been rendered nonconforming due to the state highway designation and thus required a preexisting sign permit to comply with the OMIA. OnDisplay subsequently applied for a permit in November 2014 without notifying plaintiffs. Upon receiving OnDisplay's application, ODOT emailed OnDisplay noting that OnDisplay needed to show proof of "landowner consent" on the permit application for approval.[1] ODOT also informed OnDisplay that no formal form was necessary, as "[s]omething on letter head and signed with owner name and contact info will suffice."

OnDisplay subsequently approached plaintiffs for a consent letter to obtain a permit. Plaintiff Atwood provided OnDisplay with a consent letter that stated (1) that Atwood owned the building, (2) that Atwood works with OnDisplay to sell advertising on the Wall Sign, (3) that OnDisplay was authorized to apply for a permit, and (4) that "[t]his permit

---

[1] *See* OAR 734-060-0000(4)(e) ("All applications must include written proof that the landowner consents to have applicant maintain the proposed sign.").

shall be in the name of: OnDisplay Advertising, J A Atwood, J A Atwood Corporation, their successors and assigns, as his or its interest may appear." OnDisplay submitted another permit application that listed OnDisplay as the "applicant" and Atwood as the "property owner" and the consent letter to ODOT. ODOT then issued a permit for the Wall Sign (the 2015 Permit) in the name of OnDisplay only, without notifying plaintiffs or creating a public notice of the decision.

In July 2015, OnDisplay notified Atwood that OnDisplay had sold its assets to Lamar and that the sale would result in the transfer of its lease of the Wall Sign to Lamar. OnDisplay did not notify plaintiffs that the 2015 Permit had been issued to OnDisplay alone. At the same time, OnDisplay sent ODOT a letter requesting that ODOT transfer the 2015 Permit to Lamar. After receiving a transfer fee from Lamar, ODOT transferred the 2015 Permit to Lamar without notice to plaintiffs.

In June 2018, plaintiffs notified Lamar that it would be terminating its lease on June 30, 2019. Lamar responded that "plaintiffs would be able to use the Wall Sign for advertising purposes 'in the future with a different tenant than Lamar.'"

In February 2019, plaintiffs first learned that they were not listed as the owners of the 2015 Permit. Plaintiff Atwood contacted ODOT and spoke with Defendant Debbie Lund, a program analyst for ODOT's Outdoor Advertising Program, requesting that ODOT either cancel the 2015 Permit or transfer it to plaintiffs. Lund denied the request, stating that the OMIA did not allow for "partial ownership of permits." In May 2019, plaintiffs sent a letter to ODOT explaining that (1) "plaintiffs were entitled to the [2015] Permit because they owned the Wall Sign," (2) "plaintiffs intended to own the [2015] Permit," and (3) "plaintiffs had a right to use the Wall Sign as the landowner." Plaintiffs also requested in the letter that the 2015 Permit be transferred to plaintiffs or cancelled so that plaintiffs could apply for a new permit. ODOT never responded to that letter.

In June 2019, plaintiffs also sent a letter to Lamar, with ODOT copied, instructing Lamar to not surrender or

apply for a relocation credit[2] for the 2015 Permit "until the issues regarding ownership were resolved." Shortly after sending that letter, plaintiffs' lease with Lamar terminated. On July 22, 2019, based on a request from Lamar, ODOT cancelled the 2015 Permit and issued a relocation credit to Lamar without informing plaintiffs about either action. On August 9, 2019, plaintiffs provided a notice of their tort claim pursuant to ORS 30.275(6), and the Oregon Department of Administrative Services confirmed receipt of that notice shortly after.

## B. *Procedural Facts*

In September 2019, plaintiffs applied for a new OMIA permit (the 2019 Permit Application) to advertise on the Wall Sign. ODOT denied the application, and plaintiffs challenged that denial in a contested case hearing before an administrative law judge (ALJ). After the hearing, ODOT issued a final order, denying plaintiffs' 2019 Permit Application.[3] The final order distinguished the issue of the 2019 Permit Application from the issue of the 2015 permit:

---

[2] "'Relocation credit' means a credit for future relocation of a permitted outdoor advertising sign issued in lieu of a relocation permit under ORS 377.767." ORS 377.710(25).

[3] The final order upheld ODOT's denial of the 2019 Permit Application because (1) "the dimensions of the sign described in [plaintiffs'] permit application exceed[ed] the dimension limits set forth in ORS 377.745" and "would be located within 100 feet of three other outdoor advertising signs on [plaintiffs'] property," and (2) plaintiffs did not "persuasively establish[] by the preponderance of the evidence that [plaintiffs are] the owner[s] of a preexisting nonconforming sign entitled to a permit under the provisions of ORS 377.712." With respect to the second conclusion, the final order explained:

"With that framework in mind, it is apparent that [plaintiffs were] not the owner[s] of 'the sign' that existed in 2012 when the section of Highway 596 at issue in this case became subject to the OMIA. To be sure, the sign at that time was attached to [plaintiffs'] wall in a way that rendered the wall part of the foundation elements for the sign, and thus a component of the 'sign structure.' But, the thing that was designed, used, or intended for advertising purposes was not the wall. The wall has a purpose completely unrelated to its use as a foundation element for a sign. Rather, the sign was the combination of the cable system, the illuminating lights, and the printed vinyl material which—when mounted to the west wall space—displayed a message for the public to see. That [plaintiffs'] wall was part of the foundation for displaying that sign (along with the anchors imbedded in the wall and the building foundation below) does not lead to the conclusion that the wall *was* the sign; just as [plaintiffs'] building is not a sign merely because it serves as a foundational element for a billboard erected on its roof."

"At issue in this hearing is whether [plaintiffs'] present application for a permit should be granted or denied. Whatever issues [plaintiffs'] may have had with actions taken by [ODOT] with respect to the former permit—and whatever grievances [plaintiffs] may have with the former permit holder—those matters fall outside the scope of this contested case. [Plaintiffs'] notice or knowledge of events concerning the former permit is not relevant to the matters at issue here: specifically whether [plaintiffs are] entitled to an outdoor advertising sign permit as the owner[s] of a preexisting sign or whether [ODOT] must deny [their] application under the provisions of ORS 377.715."

Plaintiffs sought judicial review of that final order in this court, and we affirmed.[4] *Jim A. Atwood Trust v. ODOT*, 341 Or App 417, 574 P3d 479 (2025).

Before ODOT issued its final order on the 2019 Permit Application, plaintiffs filed the lawsuit in this case against ODOT, Lund, and Kris Strickler, the director of ODOT at the time of the events at issue in this case, raising six claims for relief:

(1)  a claim seeking mandatory injunctive relief for violation of plaintiffs' federal substantive due process rights under 42 USC section 1983 or, in the alternative, a declaration pursuant to ORS 28.020 that defendants' actions deprived and infringed upon plaintiffs' rights under the United States Constitution;

(2)  a claim seeking mandatory injunctive relief for violations of plaintiffs' federal free speech rights under 42 USC section 1983 or, in the alternative, a declaration pursuant to ORS 28.020 that defendants' actions

---

[4] We concluded that the 2015 Permit issued to OnDisplay was a final order "constitut[ing] ODOT's final determination with respect to the permit ownership for the sign on petitioner's building, which precluded ODOT from issuing any other permit for that preexisting sign." *Jim A. Atwood Trust v. ODOT*, 341 Or App 417, 422, 574 P3d 479 (2025). With respect to the permit's cancellation and issuance of relocation credits to Lamar, we assumed without deciding that "the removal of the vinyl display, lights, and cables was the removal of the sign for purposes of the relocation credit" and concluded that all the other criteria to qualify for a relocation credit were satisfied. *Id.* at 423. Thus, because the sign had been removed at the time plaintiffs submitted the 2019 Permit Application, "there was no longer any sign for which ODOT could provide a permit," requiring denial of the application. *Id.* at 423-24. Finally, we concluded that plaintiffs' challenge to the denial of the 2019 Permit Application was an "impermissible collateral attack on the 2015 [P]ermit issued to Lamar." *Id.* at 424.

deprived and infringed upon plaintiffs' rights under the United States Constitution;

(3)  a claim seeking mandatory injunctive relief for violations of plaintiffs' state free speech rights or, in the alternative, a declaration pursuant to ORS 28.020 that defendants' actions deprived and infringed upon plaintiffs' rights under the Oregon Constitution;

(4)  a claim for declaratory judgment under ORS 28.020, seeking a declaration stating that defendants' conduct infringed on plaintiffs' federal and state constitutional rights;

(5)  a claim seeking compensatory damages for the tort of interference with prospective economic relations under the Oregon Tort Claims Act; and

(6)  a claim seeking compensatory damages for the tort of interference with contractual relations under the Oregon Tort Claims Act.

Defendants moved to dismiss all of plaintiffs' claims for lack of subject matter jurisdiction and for failure to state a claim. As explained in a letter opinion, the trial court dismissed all the claims as to the individual defendants, Lund and Strickler, for failure to state a claim for relief because the FAC lacked allegations that either defendant had "engaged in wrongful conduct." The court also concluded that plaintiffs' federal and state free speech claims (claims 2 and 3) failed to state a claim for relief because the FAC did not "explicitly set forth the exact relief sought other than 'a declaration that [ODOT's] conduct and its application of the OMIA on the facts of this case violates [plaintiffs'] rights under the United States and Oregon Constitutions.'" Finally, the court concluded that plaintiffs' claim for interference with contractual relations (claim 6) failed to state a claim because "Atwood terminated the lease with Lamar prior to ODOT cancelling the permit and issuing the relocation credits," thus "[a]ny action taken by ODOT that may have interfered with Atwood and Lamar's contract occurred after the contract was no longer in existence."

In the same letter opinion, the court also determined that it lacked subject matter jurisdiction over all of

the claims, concluding that the exclusive avenue for challenging the agency actions at issue was through the judicial review procedures outlined in the Oregon Administrative Procedures Act (APA), ORS 183.310 to 183.745. The court specifically explained:

> "[T]he APA provides the exclusive remedy to challenge the refusal to transfer the permit or vacate the cancellation of the permit. To this court's knowledge, [plaintiffs] did not administratively challenge ODOT's decision regarding the [2015 Permit]. [Plaintiffs'] requested remedy for a mandatory injunction and declaratory relief from this court is precluded because [they] had a remedy under [the] APA. This is true even if [plaintiffs] would not have prevailed in [their] attempt to obtain it."

The court similarly found that plaintiffs' tort claims failed for lack of subject matter jurisdiction because the facts necessary to establish the second element of the claims "constitute allegations of agency error and Oregon law requires the use of the APA as the exclusive procedure for challenging these facts."

The court entered a general judgment dismissing all of plaintiffs' claims, and this appeal followed.

## II.   ANALYSIS

On appeal, plaintiffs assign error to the trial court's dismissal of all six of plaintiffs' claims for lack of subject matter jurisdiction and to the trial court's dismissal of plaintiffs' tort claims for failure to state a claim.

### A.   *Scope of the Appeal*

Before we determine whether the trial court erred in dismissing plaintiffs' claims, we must answer the threshold question of whether we should address the dismissal of all six of plaintiffs' claims. Defendants point out that plaintiffs failed to assign error to the trial court's dismissal of individual defendants Lund and Strickler, who were the only defendants[5] subject to plaintiffs' section 1983 claims (claims

---

[5] With respect to plaintiffs' two section 1983 claims (claims 1 and 2), because the trial court dismissed the two individual defendants for failure to state a claim, ODOT was the sole remaining defendant of those claims. To bring a section 1983 claim, a plaintiff must allege that their federal rights were violated by a "person"

1 and 2), for failure to state a claim against them. Plaintiffs also failed to assign error to the trial court's alternative basis for dismissal of plaintiffs' free speech claims (claims 2 and 3) for failure to state a claim. As a result, defendants argue that the correctness of the trial court's dismissal of the individual defendants and of the free speech claims are not before this court, and plaintiffs' failure to assign error to those independent and alternative rulings prevent us from granting relief on those claims. *See Strawn v. Farmers Ins. Co.*, 350 Or 336, 369-70, 258 P3d 1199, *adh'd to on recons*, 350 Or 521 (2011) (concluding that we erred in reaching the defendants' challenge because the trial court had "articulated two alternative reasons" for denying the defendants' motions and, on appeal, the defendants "failed to preserve any challenge [to those reasons] on which the trial court's order was alternatively based").

Plaintiffs do not dispute that they did not assign error to those rulings in their opening brief. ORAP 5.45(1) ("Assignments of error are required in all opening briefs of appellants and cross-appellants. No matter claimed as error will be considered on appeal unless the claim of error * * * is assigned as error in the opening brief in accordance with this rule * * *."). However, they contend that the trial court's determination that it lacked subject matter jurisdiction over all of plaintiffs' claims nullified the court's concurrent rulings on defendants' motions to dismiss for failure to state a claim. Plaintiffs argue that the trial court's decision on subject matter jurisdiction "should have caused the trial court to refrain from further substantive rulings on defendants' other ORCP 21 motions." Plaintiffs point out that, had the trial court only ruled on defendants' motions to dismiss for failure to state a claim, plaintiffs could have requested leave to file an amended complaint to fix the deficiencies under ORCP 21 A(2)(c).[6] *See Wallace*, 245 Or App at 24 n 4 ("[I]t

---

acting under color of state law, not by a state agency. *Howlett v. Rose*, 496 US 356, 365, 110 S Ct 2430, 110 L Ed 2d 332 (1990) ("[T]he [s]tate and arms of the [s]tate, which have traditionally enjoyed Eleventh Amendment immunity, are not subject to suit under [section] 1983 in either federal court or state court."). Because ODOT is a state agency and not a "person," it cannot be subject to a section 1983 suit.

[6] "If the court grants a motion to dismiss, the court may enter judgment in favor of the moving party or grant leave to file an amended complaint." ORCP 21 A(2)(c).

would not be appropriate for us to resolve the case on [the basis of failure to state a claim] because the dismissal of plaintiff's claims on jurisdictional grounds foreclosed any opportunity for plaintiff to replead his claims to address the purported deficiencies in them.").

"[W]hen a court's decision or ruling is premised on alternative grounds, a party challenging that ruling generally must take issue with all independent and alternative grounds on which it is based to obtain relief." *Strawn*, 350 Or at 366. "[W]here [a party] fail[s] to challenge the alternative basis of the trial court's ruling, we must affirm it." *Roop v. Parker Northwest Paving Co.*, 194 Or App 219, 236, 94 P3d 885 (2004), *rev den*, 338 Or 374 (2005). In light of that general rule, we are not convinced that the conclusion in *Wallace*—that it would not be appropriate to resolve the case on the basis of failure to state a claim—applies here due to the differing procedural facts. In *Wallace*, we noted that, because the trial court did not "expressly address" whether the claims at issue also failed to state a claim for relief, we could not "discern whether the purported failure to state ultimate facts was determined by the court to be an independently sufficient ground on which to dismiss [the] plaintiff's claims." *Wallace*, 245 Or App at 24 n 4. Here, the trial court did expressly address whether the due process, free speech, and tort claims stated a claim for relief and ultimately concluded that they failed to do so. Furthermore, we also noted in *Wallace* that the defendant "did not argue on appeal that we should affirm the court's dismissal on the alternative basis." *Id*. Here, defendants do argue on appeal that we should affirm the trial court's dismissal of those claims for failure to state a claim.

Thus, because plaintiffs failed to assign error to the trial court's alternative bases for dismissing their first three claims, we reject plaintiffs' assignments of error challenging the trial court's dismissal of those claims for lack of subject matter jurisdiction without further discussion.

B.  *Subject Matter Jurisdiction*

We now turn to whether the trial court erred in ruling that it lacked subject matter jurisdiction over plaintiffs'

remaining three claims. We review the dismissal of an action on jurisdictional grounds for legal error. *Parker v. City of Albany*, 208 Or App 296, 298, 144 P3d 976 (2006).

Plaintiffs first argue that the alleged agency actions forming the basis of plaintiffs' claims on appeal are related only to the 2015 Permit, and the final order from the administrative hearing reviewing ODOT's denial of the 2019 Permit Application clearly excluded consideration of the agency actions underlying the 2015 Permit. In light of that distinction, plaintiffs argue that the trial court erred to any extent that it relied on the review process of the 2019 Permit Application in determining whether it had subject matter jurisdiction over the claims relating to ODOT's conduct underlying the 2015 Permit. However, we do not see anything in the trial court's letter opinion indicating that the court relied on the administrative review of the 2019 Permit Application. On the contrary, the court clearly addressed the distinction between the two issues multiple times:

> "The Final Order makes it clear that the administrative hearing did not address issues regarding ODOT's refusal to transfer the [2015 Permit] to [plaintiffs], cancellation of the [2015 Permit] or issuance of relocation credits to Lamar. However, ODOT argues that this court lacks jurisdiction to address [plaintiffs'] claims in the FAC because these claims are subject to the APA. ***

> "Clearly, the March 3, 2021, Final Order did not address the ODOT's refusal to transfer the [2015 Permit] and cancellation of the permit. The administrative decision specifically stated that the decision upholding ODOT's denial of [the 2019 Permit Application] only applied to ODOT's October 2, 2019, decision, and [plaintiffs'] argument that [they were] entitled to a permit based on the conditions existing prior to October 1, 2012. The administrative decision did not address ODOT's refusal to transfer the 2015 [P]ermit to [plaintiffs] or cancellation of this permit in July 2019."

The record thus reflects that the trial court did not consider the judicial review process of the 2019 Permit Application when it determined that it lacked subject matter jurisdiction over plaintiffs' claims relating to the 2015 Permit.

We now turn to the question of whether the trial court erred in concluding that the agency actions underlying the 2015 Permit were exclusively subject to the judicial review process under the APA and that the court therefore lacked subject matter jurisdiction over plaintiffs' claims because plaintiffs had not first "administratively challenge[d] ODOT's decision[s]" regarding the 2015 Permit. We address plaintiffs' declaratory judgment claim first and then turn to plaintiffs' two tort claims.

1. *Plaintiffs' declaratory judgment claim*

The trial court dismissed plaintiffs' first through fourth claims for lack of subject matter jurisdiction, concluding that the claims involved administrative decisions and the exclusive avenue for challenging the lawfulness of those decisions was through the APA judicial review process. Because we affirmed the court's dismissal of the first three claims, we now address the dismissal of the remaining declaratory judgment claim (claim 4).

"The [APA] establishes a comprehensive pattern for the judicial review of administrative decisions. The various APA statutes governing judicial review provide the sole and exclusive methods of obtaining judicial review." *Bay River v. Envir. Quality Comm.*, 26 Or App 717, 720, 554 P2d 620, *rev den*, 276 Or 555 (1976). Additionally, "[j]udicial review [of an administrative decision] is only available after the procedure for relief within the administrative body itself has been followed without success." *Mullenaux v. Dept. of Revenue*, 293 Or 536, 539, 651 P2d 724 (1982).

This general principle of APA exclusivity appears to apply to claims brought under the Uniform Declaratory Judgments Act (UDJA), ORS 28.010 to 28.160. Under ORS 28.020 of the UDJA, "[a]ny person *** whose rights, status or other legal relations are affected by a constitution, statute, municipal charter, ordinance, contract or franchise may *** obtain a declaration of rights, status or other legal relations thereunder." However, "[a] court lacks subject matter jurisdiction under the [UDJA] if some other exclusive remedy exists to address the dispute." *Salibello v. Board of Optometry*, 276 Or App 363, 367, 367 P3d 932 (2016). "When

the dispute at issue involves an agency's action, or refusal to act, the review provisions of the APA provide the sole and exclusive means of obtaining judicial review, and an action for declaratory relief is not available." *Id.*

The allegations in the FAC specific to plaintiffs' fourth claim are somewhat unclear as to which of ODOT's actions regarding the 2015 Permit they are challenging. For example, plaintiffs alleged that they "are entitled [to a] declaration from [the trial court] that defendants' application of the OMIA to plaintiffs, under the facts of this case, deprives and infringes upon plaintiffs' rights under the United States and Oregon Constitutions[,]" where "application of the OMIA to plaintiffs" can be interpreted broadly. However, given that plaintiffs also alleged in the claim that "plaintiffs requested that any permit for outdoor advertising issued in relation to the Wall Sign be issued in plaintiffs' names, but ODOT neglected or refused to do so[,]" we assume the claim is directed only at ODOT's action of issuing the 2015 Permit to OnDisplay, as there are no other allegations associated with this claim that appear to be directed at ODOT's actions of cancelling and issuing relocation credit for the 2015 Permit at Lamar's request.

In light of this assumption, we must now determine whether the issuance of the 2015 Permit to OnDisplay was an agency action that would be subject to the judicial review provisions of the APA. The APA provides for, among other things, the procedures for seeking judicial review of agency actions, which can generally be defined as either rules or orders. Because ODOT's issuance of the 2015 Permit was "directed to a named person"[7] (OnDisplay), that action is properly characterized as an order. *See* ORS 183.310(6)(a) (defining "order" in part as "any agency action expressed orally or in writing directed to a named person or named persons"). Neither party disputes this characterization.

"Orders may be issued either in contested cases or in less formalized circumstances, *i.e.*, in circumstances 'other than' contested cases." *Oregon Env. Council v. Oregon*

_____

[7] "'Person' means any individual, partnership, corporation, association, governmental subdivision or public or private organization of any character other than an agency." ORS 183.310(8).

*State Bd. of Ed.*, 307 Or 30, 36, 761 P2d 1322 (1988). A "contested case" is expressly defined as a proceeding before an agency:

> "(A)  In which the individual legal rights, duties or privileges of specific parties are required by statute or Constitution to be determined only after an agency hearing at which such specific parties are entitled to appear and be heard;

> "(B)  Where the agency has discretion to suspend or revoke a right or privilege of a person;

> "(C)  For the suspension, revocation or refusal to renew or issue a license where the licensee or applicant for a license demands such hearing; or

> "(D)  Where the agency by rule or order provides for hearings substantially of the character required by ORS 183.415, 183.417, 183.425, 183.450, 183.460 and 183.470."

ORS 183.310(2)(a). The APA does not define "orders in other than contested cases," but the Supreme Court has found that an agency action that does not fit within the statutory definitions of a "rule" or an "order in a contested case" "is—by a process of elimination—an order in other than a contested case." *Oregon Env. Council*, 307 Or at 43-44. "[T]he characterization of [an] order as either a 'contested case' order or an 'order[][in] other than [a] contested case[]' depends not on whether the agency actually provided petitioner with a contested case proceeding, but on whether the agency was required by a statutory provision to do so." *Rooklidge v. DMV*, 217 Or App 172, 178, 174 P3d 1120 (2007), *rev den*, 345 Or 94 (2008), *cert den*, 557 US 923 (2009) (first brackets added; remaining brackets in original).

The parties have not addressed whether the issuance of the 2015 Permit is an order in a contested case, as described in ORS 183.310(2)(a), or an order in other than a contested case. However, in either case, judicial review is available to "any person adversely affected or aggrieved by an order or any party to an agency proceeding." ORS 183.480(1); *see also* ORS 183.482 (setting out procedure for judicial review of orders in contested cases); ORS 183.484 (setting out procedure for judicial review of orders in other than contested cases).

For an order to be subject to the judicial review procedures under the APA, it must be a "final order." ORS 183.310(6)(b) (defining "final order" as one that is "expressed in writing," and "does not include any tentative or preliminary agency declaration or statement that: (A) [p]recedes final agency action; or (B) [d]oes not preclude further agency consideration of the subject matter of the statement or declaration"). We conclude, and the parties do not dispute, that ODOT's issuance of the 2015 Permit was a "final order," at least once the time for requesting an administrative hearing had passed. *See Jim A. Atwood Trust*, 341 Or App at 421-22 (explaining that the issuance of the 2015 Permit was a final order because it was "expressed in writing, and constituted ODOT's final determination with respect to the permit ownership for the sign on petitioner's building, which precluded ODOT from issuing any other permit for that preexisting sign"). Thus, the APA judicial review procedures apply to that order, and plaintiffs were required to seek judicial review of that order exclusively through that process but failed to do so.

However, plaintiffs argue that the principle of APA exclusivity nevertheless does not apply to their claims because ODOT never notified plaintiffs about any of its actions regarding the 2015 Permit. Because, in plaintiffs' view, plaintiffs were not aware of those actions until long after the deadline for filing a petition for review had passed, plaintiffs contend that the APA pathways for judicial review of those decisions were not "available" to them. *See Lake County v. State of Oregon*, 142 Or App 162, 166, 920 P2d 1115 (1996) (stating APA jurisdiction is exclusive "when APA review is available"); *see also Ashland Drilling, Inc. v. Jackson County*, 168 Or App 624, 630, 4 P3d 748, *rev den*, 331 Or 429 (2000) ("APA review is available where administrative remedies are available."). Because of that lack of notice, plaintiffs argue that they were not required to seek judicial review of ODOT's actions in accordance with APA procedures.

Defendants, in response, contend that any failure to notify plaintiffs of the agency's actions regarding the 2015 Permit does not affect jurisdictional requirements for reviewing those actions, as "the determinative issue

is whether the agency action is the kind of action that is governed by the APA," not whether "a person was aware of the agency's decision." Defendants further argue that "APA exclusivity applies to bar actions in circuit court even when APA review is no longer available because the time for filing a petition for judicial review has passed." Thus, according to defendants, plaintiffs' failure to challenge ODOT's actions prior to the filing deadline, even if that failure was a result of their lack of notice of those actions, does not allow them to circumvent the exclusive judicial review procedures outlined in the APA.

In our view, plaintiffs' argument misunderstands what it means for APA review to be "available." In our case law, when we discuss that APA review is exclusive when it is "available," we are referring to the procedural availability of administrative remedies with respect to the agency decision at issue. *See Ashland Drilling, Inc.*, 168 Or App at 630 ("Thus, when there is an administrative remedy, review of that remedy is exclusively under the APA."). APA review that is available in that sense does not become "unavailable" solely because a particular person was not aware of the availability of those APA procedures at the time of the agency decision or was not aware of the specifics of the agency's decision. *Cf. Salibello*, 276 Or App at 369 (explaining that APA review is exclusive if the APA provides a process for judicial review the claim); *Mossberg v. University of Oregon*, 240 Or App 490, 496-97, 247 P3d 331, *rev den*, 351 Or 216 (2011) (concluding that APA review was unavailable to former employee where the faculty grievance process, which was the administrative remedy that could result in a final order subject to judicial review, was available only to current employees).

Plaintiffs do not explain why APA review was unavailable to them beyond the bare assertion that ODOT's failure to give them formal notice made it unavailable. We reject that argument for the reasons explained and conclude that the trial court did not err in dismissing plaintiffs' fourth claim for lack of subject matter jurisdiction. To any extent plaintiffs are arguing that they were legally entitled to formal notice of the issuance of the 2015 Permit, they did

not articulate any statutory or constitutional basis for that entitlement. *See Beall Transport Equipment Co. v. Southern Pacific*, 186 Or App 696, 700 n 2, 64 P3d 1193, *decision clarified on recons*, 187 Or App 472, 68 P3d 259 (2003) ("[I]t is not this court's function to speculate as to what a party's argument might be. Nor is it our proper function to make or develop a party's argument when that party has not endeavored to do so itself.").

2.  *Plaintiffs' tort claims*

The trial court also dismissed plaintiffs' tort claims (claims 5 and 6) for lack of subject matter jurisdiction. In doing so, the court concluded that the "intentional interference by ODOT is established by ODOT's refusal to transfer the permit from Lamar to Atwood and cancelling the permit," and because "Atwood cannot establish the [intentional interference] element without proving those facts" which "constitute allegations of agency error," the exclusive way to challenge those actions was through the APA judicial review procedures.

In plaintiffs' fifth claim, they allege that ODOT intentionally interfered with plaintiffs' prospective economic relations because ODOT was "aware of plaintiffs' past economic relations with tenants and plaintiffs' prospective economic relations with future tenants, and that plaintiffs intended to enter into leases with those tenants for use of the Wall Sign for advertising purposes," but nevertheless cancelled the 2015 Permit and issued relocation credits to Lamar without notifying plaintiffs. Similarly, in plaintiffs' sixth claim, they allege that defendants intentionally interfered with plaintiffs' contractual relations because they were aware of plaintiffs' contractual relationship with Lamar and of an "ownership dispute with respect to the [2015] Permit," but nevertheless "worked with Lamar to prepare for the cancellation of the [2015] Permit and the issuance of the relocation credit to Lamar, without any notice to plaintiffs and despite plaintiffs' request that defendants refrain from doing so."

Taking these allegations as true, both of plaintiffs' tort claims for intentional interference are premised on the

validity of ODOT's actions of cancelling and issuing relocation credit for the 2015 Permit. Because of that, if those actions are "final orders" subject to the APA judicial review process, plaintiffs were required to determine the validity of those orders through the APA first before bringing their tort claims in circuit court. *See Clarke Electric, Inc. v. State Highway Division*, 93 Or App 693, 697, 763 P2d 1199 (1988) (affirming trial court's dismissal of tort claims for lack of jurisdiction because the "defendant's alleged liability in tort is premised on a finding that [the] defendant's order *** was improper[,]" and "the exclusive procedure for review of such an order is under the APA").

The parties do not dispute that ODOT's actions of cancelling and issuing relocation credit for the 2015 Permit were "orders" directed at Lamar, nor do they dispute that those orders were "final orders" "preclud[ing] further agency consideration of the subject matter of the statement or declaration," ORS 183.310(6)(b), thus making those orders subject to the APA judicial review procedures. Therefore, because plaintiffs' tort claims are necessarily dependent on whether ODOT's final orders of cancelling and issuing relocation credit were lawful, and the exclusive way to determine the lawfulness of an agency's final orders is via the APA judicial review procedures, plaintiffs were required to seek judicial review of those actions first before bringing its tort claims in circuit court.

Plaintiffs argue that they were not required to exhaust their administrative remedies under the APA before bringing their tort claims to the circuit court because the claims sought tort damages, and those damages are not an available remedy under the APA. *See Burns v. Board of Psychologist Examiners*, 116 Or App 422, 425, 841 P2d 680 (1992) ("It is clear that the only kind [of monetary relief] sought here, tort damages, are *not* available under ORS 183.486(1)(b)." (Emphasis in original.)). Although plaintiffs are correct that they cannot pursue a tort damages remedy through the APA, their tort claims are still premised on the validity of ODOT's actions, which needed to be determined exclusively through the APA process first before plaintiffs could bring their tort claims in circuit court. *See Muller*

*v. Dept. of Agriculture*, 164 Or App 11, 16-17, 988 P2d 927 (1999) ("If [the plaintiff] is entitled to a remedy, he must establish the invalidity of the agency action in the first place. We merely hold that the exclusive mechanism for establishing the invalidity of the agency action is provided in the APA."); *Wallace*, 245 Or App at 32 (concluding that the "plaintiff must exhaust his administrative remedies under the APA as a predicate to establishing his right to recover compensatory relief in the court action"). Because plaintiffs have not done so, the trial court properly dismissed the tort claims for lack of subject matter jurisdiction.

The trial court also dismissed plaintiffs' tort claims for failure to state a claim, but only explained that the sixth claim failed because plaintiffs' contract with Lamar had terminated prior to ODOT cancelling and issuing relocation credits for the 2015 Permit, and therefore there was no contract in existence for defendants to interfere with. The trial court did not explain how the fifth claim for interference with prospective economic relations failed to state a claim. However, because we affirm the trial court's ruling dismissing plaintiffs' fifth and sixth claims for lack of subject matter jurisdiction, we do not address whether the trial court erred in concurrently dismissing those claims for failure to state a claim.

Affirmed.